,Argued September 5; affirmed October 1; rehearing denied
November 5, 1935

# STACEY *v.* GOLD
(49 P. (2d) 370)

*J. LeRoy Smith,* of Portland, for appellant.

*Charles R. Spackman, Jr.,* of Portland, for respondent.

BAILEY, J. This action is brought by plaintiff against Felix Gold, based on a check for $600 delivered to the plaintiff on May 17, 1931, and postdated June 2 of the same year. It was signed, "Felix Gold by A. Gold". When presented to the bank for payment on June 2 it was dishonored on account of insufficient funds. Thereafter it was presented several times, with like results.

The case was tried before the court without the intervention of a jury, and from a judgment in favor of the defendant the plaintiff appeals.

A. Gold was a nephew of Felix Gold, who had brought him to this country and set him up in the grocery business about 1920. The business of A. Gold expanded until at one time he was the owner and operator of five or six grocery stores. However, in the general depression he became financially involved and in 1930 lost his entire business.

In April of that year his uncle bought one of the stores formerly operated by A. Gold, on Mississippi avenue in Portland, paying some $600 for the fixtures, and placed $1,000 in the United States National Bank of Portland for use in operating the store. The signature card filled in at the time this account was opened was as follows:

"Gold, Felix.
Opened with U. S. National Bank of Portland April 7, 1930. Below please find signature(s) which you will recognize in payment of funds or the transaction of other business on my (or our) account."

The card was signed thus: "Felix Gold by A. Gold" and "Felix Gold".

The business on Mississippi avenue was that of a retail grocery store. Felix Gold was, and for about 30 years had been, engaged in the transfer business, and he did not give any of his attention whatever to the grocery store, which his nephew conducted. The nephew was authorized to draw $100 per month as his salary for conducting the business. He alone drew on the account, and signed all the checks "Felix Gold by A. Gold". The monthly bank statements were delivered to A. Gold, the nephew, except that there was some testimony to the effect that the June, 1930, statement was

delivered to Felix Gold. In addition to conducting this retail grocery store the nephew almost from the first also did a jobbing business in buying from railroads and other concerns fire-damaged or bankrupt stocks of groceries and merchandise, at prices below wholesale, and reselling the same at wholesale to retailers. These transactions, as far as the record discloses, were conducted in the name of the nephew alone, although many of the checks in payment for such goods were drawn on the account in the United States National Bank.

Within a block and a half of the store on Mississippi avenue was the grocery and meat store of Mrs. W. Stacey, Jr. The husband of Mrs. Stacey worked for her. He had known A. Gold while the latter had been engaged in business for himself as a grocer and had at different times advanced him money, which was later repaid. From July, 1930, until the death of A. Gold on June 20, 1931, Stacey advanced to A. Gold several thousands of dollars and there were delivered to said Stacey by A. Gold during that period, in addition to the check involved herein, 31 checks, aggregating $4,-677.06, all issued on the United States National Bank of Portland and signed "Felix Gold by A. Gold". These checks represented repayments of money so advanced by Stacey to A. Gold and were all postdated from two or three days to two weeks subsequent to the time of their respective delivery. Some of these checks were returned by the bank because of insufficient funds, but eventually were paid. The record discloses seven checks, totaling $1,600, from Mrs. Stacey to A. Gold. The balance of the money advanced by the Staceys was made up either of cash from their till or checks of other makers given to them and by them given to A. Gold.

The plaintiff knew that the bank had advised A. Gold that, on instructions of his uncle, A. Gold was not

to issue any checks on the bank unless funds in the account were sufficient to pay them. The bank had in the past returned checks of A. Gold drawn against insufficient funds and had made a charge of 25 cents for each check so returned. The plaintiff did not meet the defendant until after the death of A. Gold, had never had any contact with him and made no effort to ascertain whether he had knowledge of the issuance of postdated checks by the nephew. He knew, however, that Felix Gold was in the transfer business during all the period of his dealings with the nephew.

The trial court found, among other things, that A. Gold, "acting for himself only", borrowed from the plaintiff on May 17, 1931, the sum of $600, and gave to the plaintiff in payment therefor the check involved in this action; that the said A. Gold at the time of issuing said check had no authority, either express or implied, to repay from the funds of Felix Gold in the United States National Bank, then or thereafter, the money so borrowed by him from Stacey; that during the time A. Gold was operating the grocery store he was also engaged in a jobbing business for himself, buying and selling merchandise, and had without the consent of Felix Gold used the funds of the latter in that business; that the plaintiff knew that A. Gold was engaged in such business and had loaned the $600 evidenced by the check in suit to A. Gold to purchase a certain stock of fire-damaged merchandise; that the $600 which was borrowed was deposited to the account of Felix Gold by his nephew on or about May 18, 1931, and on the said date A. Gold had withdrawn from said account $300, on the twentieth day of the same month $255, and on the twenty-third of the month $300, for his own individual jobbing business, and that said withdrawals had been without the knowledge, consent or subsequent

ratification of the defendant; that the defendant had no knowledge prior to the death of his nephew concerning the state of the bank account; that the nephew had no authority to borrow money for the defendant and the defendant had no knowledge that his nephew "was borrowing money and attempting to pledge the credit of Felix Gold for the repayment thereof, nor did Felix Gold hold A. Gold out as authorized to borrow money for the defendant or as authorized to borrow money for himself and pledge the credit of Felix Gold for the repayment thereof"; and that the defendant never received any benefit or any value or consideration of any nature whatever for the check on which this action is based.

There is sufficient competent evidence to support these findings of fact by the circuit court. It is the contention of the plaintiff, however, that the authority given to the bank for the nephew to issue checks on the defendant's account created a general agency and included the issuance of postdated checks. The authority of the bank was only to honor checks drawn in the manner specified on the signature card in the event that there was sufficient money in the account to pay the same.

■ We do not have here involved the question of a check issued in payment for goods bought by the nephew for the grocery store and there resold in the regular course of its operation. The money which was loaned by the plaintiff to the nephew was, according to the findings, used by the nephew in his own individual business. We are aware of the fact that the plaintiff maintained all through the trial that this was not a loaning of money for the reason that there was no interest or other consideration to be paid for the use of the money advanced. We do not understand, however,

that such a condition is essential to the loaning of money.

■ There was no holding out by the defendant whereby the plaintiff was induced to loan this money to the nephew, nor was there anything on the face of the checks previously given by the nephew to Stacey to indicate that they were at the time of delivery postdated or that they were given in return for money borrowed by the nephew. There was no ratification by the defendant of the past transactions between his nephew and the plaintiff. All the checks in evidence which were given by Stacey to the nephew in exchange for postdated checks from the latter were payable to the nephew individually. Stacey knew that the nephew was warned against issuing checks when there were insufficient funds in the bank account to meet payment. He also knew that the jobbing business in which the nephew was engaged was not incidental to or connected with the operation of the Mississippi avenue grocery store. All the evidence indicates that Stacey was financing A. Gold, in part at least, in the latter's jobbing business, with the expectation of repayment when the goods were resold.

There are numerous interesting legal questions discussed in the briefs of both the appellant and the respondent, but we can not see, in view of the findings of the trial court, any necessity of considering them. The judgment appealed from is affirmed.

ROSSMAN and BELT, JJ., not participating.